REALTY AND SECURITY COMPANY, PLAINTIFF-RESPONDENT, v. JAMES H. WALDEN, DEFENDANT-APPELLANT.

Argued February 5, 1937—Decided April 30, 1937.

For the plaintiff-respondent, *Greenburg, Wilensky & Feinberg* (*Bernard Feinberg*).

For the defendant-appellant, *Minturn & Weinberger* (*Harry H. Weinberger*).

The opinion of the court was delivered by

CASE, J. Plaintiff sued the defendant on his demand promissory note in the amount of $50,000, made by the defendant to his own order on November 23d, 1931, endorsed by him forthwith and discounted at Peoples Bank and Trust Company. Thereafter the note was endorsed by Peoples Bank and Trust Company to plaintiff, a holding company which took over certain of the bank's securities and paid cash therefor in order to permit the reorganization and reopening of the bank following financial stress. On the bringing of suit defendant filed answer and counter-claim which, on motion made and counter-affidavits filed, were struck. Summary judgment for plaintiff was entered and is now under appeal by the defendant.

Appellant's first point is that a motion to strike an answer is granted only in the clearest cases and when there are no facts presented entitling the defendant to defend. That is so.

His second point is that the plaintiff is not a holder in due course of the note in question. The ownership of the note by the plaintiff is not disputed. We shall assume that defenses valid as against the bank are valid as against the plaintiff.

The third and fourth points are that the bank breached the conditions upon which the note was delivered to it and that the conditional delivery of the note by the defendant and the failure of such conditions constitute a good legal defense. The facts upon which this argument is based are partly these: In November, 1931, appellant was a stockholder in, and a director and a vice-president of, Peoples Bank and Trust Company. It was contemplated that Peoples Bank and Trust Company would and should consolidate with certain other banks, but the entrance of the bank into that consolidation was prevented by the depreciation in the value of the bank's securities. The outstanding capital stock of the bank

was thirty-six thousand shares. Of that amount five hundred and twenty shares were in the name of the appellant. Further than that, eight hundred shares were in the names of appellant's daughters, one thousand shares were owned by a trust called "J. & J. Walden Trust," and six hundred and fifty-nine shares were registered in the name of Peoban & Company for Walden's benefit, although of these shares it is said by Walden—and on this proceeding that assertion prevails—that the trust and Peoban shares were in an irrevocable trust over which appellant had no control and that appellant's daughters, in that they were over twenty-one years of age, were the owners in their own right and held their stock independent of any control by him. However, appellant was substantially interested in the continued solvency and in the hoped-for prosperity of the bank. In that situation he with other interested persons—officers, directors and stockholders, although all of the conferees were not officers or directors and not all of the officers and directors were conferees—met informally, without any authority from the bank, at the home of one of the officers. Various of the persons then present—Walden amongst them—undertook to put cash funds into the hands of William H. Stevens, who was the president of the bank, to be applied by him in manner designated for the strengthening of the bank's financial structure; but there was no bank action giving instruction or delegation of power with regard to these contributions or any of them or the disposition thereof.

In the points under discussion appellant asserts that the note was accepted by the bank under the condition, orally imposed by him, that the proceeds when paid to Stevens as trustee were to be paid out by the latter in accordance with a determined arrangement, that the condition thus imposed was not carried out by Stevens and that consequently appellant was relieved from his obligation to repay the note. There is no writing by which a hint of any condition is given or which is consistent with the suggested condition.

The subscriptions made at the conference totaled the sum of $250,000, of which $221,890.87 was actually placed in

Stevens' hands. Appellant did not have the cash for the payment of his subscription of $50,000 and he therefore asked the bank to discount his note in that amount. As he was a director, it was necessary (1 *Comp. Stat. pp.* 164, 169 § 12; 4 *Comp. Stat., p.* 5654, § 15) for him to make the application in writing, and he did that in a letter addressed to the board of directors and reading thus:

"Gentlemen:

I hereby request you to purchase a note for $50,000 dated Nov. 23, 1931 payable on demand after date, made by me and endorsed by me.

Respectfully,

JAS. H. WALDEN,

Director,

Peoples Bank & Trust Company,

Dated, Nov. 23, 1931."

Thereupon the directors granted the application. The bank discounted the note, placed the $50,000 proceeds to appellant's personal checking account, and appellant, over his own signature, checked the full amount to William H. Stevens. The note itself is in the usual form, made by Walden to the order of himself, and endorsed by him beneath a writing wherein he guaranteed the payment of the note and waived notice of demand and of non-payment. Appellant paid interest regularly, sixteen monthly payments, until March 31st, 1933, several weeks after the national banking holiday, when the bank, in an insolvent condition, was taken over by the commissioner of banking and insurance pending reorganization. It was in this financial crisis that the plaintiff corporation was formed for the protection of depositors and to assist in furnishing funds for the reopening of the bank.

Appellant's argument, if sound, would entail an obligation upon the bank to follow the proceeds of the note into appellant's hands and out again into the hands of Stevens and then to control Stevens in the latter's disposition of the moneys. The condition averred by the appellant was not in the nature

of a conditional delivery, which, under section 16 of the Negotiable Instruments act (3 *Comp. Stat., p.* 3737) may be shown as between immediate parties. The promise to pay may not be converted by parole evidence into a conditional contract. A conditional delivery partakes of the nature of an escrow. We need not demonstrate the significance of delivery with respect to a legal instrument. Sufficient to say that it is preliminary to and not a part of the contract. When delivery is legally effected, then the obligation of the contract attaches. What appellant seeks to do is to show that after the note had accomplished its purpose and the face amount thereof had been placed in his hands and paid out by him to an individual, the bank was bound by oral agreement to supervise and assure the character of disposition by that person of the money, and that a failure by the bank so to supervise and assure justifies the appellant, legally, in refusing to pay the note. Such an arrangement clearly could not be a condition upon the delivery of the note because it was only upon or after delivery that the proceeds of the note were payable to appellant. Appellant well knew when he checked the funds that delivery of the note from him to the bank had been completed; else the money was not lawfully to his credit and he, an officer and director of the bank, was in effect violating the statute by overdrawing his account. He well knew that the disposition of the funds by Stevens would be subsequent to the receipt by the latter of the money and that the money could not reach appellant, much less Stevens, until there had been complete delivery of the note to the bank. It is entirely manifest that the condition which appellant insists existed was not incident to the *delivery* of the note. We know of no other exception, applicable to these facts, whereby appellant may escape the rule expressed in *Naumberg* v. *Young,* 44 *N. J. L.* 331, and restated many times since (see particularly *Middleton* v. *Griffith,* 57 *Id.* 442) that parole evidence is inadmissible to alter or vary the terms of a written contract. The wisdom of the rule appears strikingly in the present case where otherwise the bank examiners, the depositors and others who relied upon the

assumption that things were as they seemed to be would have been deceived by a concealment so studied as to have the earmarks of fraud.

Consequently we find no competent proofs to convert appellant's note into something different from that which, on its face, it appears to be, namely, an instrument in writing, signed by the maker, containing an unconditional promise to pay, to order, on demand, a sum certain in money; and we find in defendant's proofs no sufficient defense to the suit on the note.

There is force in respondent's contention that appellant, by reason of his conduct measured in terms of his duties to the bank, its depositors and stockholders, is estopped to deny the debt; but we find it unnecessary to go into that question.

The striking of the counter-claim to recover the sums paid for interest on the note is not argued in appellant's brief and is therefore to be regarded as abandoned. *Cleaves* v. *Yeskel*, 104 *N. J. L.* 497.

The judgment below will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Hetfield, Dear, Wells, WolfsKeil, Rafferty, Cole, JJ. 16.

*For reversal*—None.